# EXHIBIT D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

AMERICAN AIRLINES, INC.,

          *Plaintiff*,

-*against*-

JETBLUE AIRWAYS CORPORATION,

          *Defendant.*

Civil Action No.: 25-

## **DEFENDANT'S INDEX**

1. 2025-04-28    AMERICAN AIRLINES, INC.'S ORIGINAL PETITION
2. 2025-04-29    ORDER OF RECUSAL
3. 2025-05-01    ORDER OF TRANSFER DUE TO RECUSAL

Case 3:25-cv-01337-X     Document 1-4     Filed 05/28/25     Page 3 of 19     PageID 22

E-filed in the Office of the Clerk
for the Business Court of Texas
4/28/2025 4:19 PM
Accepted by: Alexis Jennings
Case Number: 25-BC08B-0007

25-BC08B-0007

CAUSE NO. _____

| | |
|---|---|
| AMERICAN AIRLINES, INC., | IN THE BUSINESS COURT |
| Plaintiff, | |
| v. | EIGHTH BUSINESS COURT DIVISION |
| JETBLUE AIRWAYS CORPORATION, | |
| Defendant. | TARRANT COUNTY, TEXAS |

## **AMERICAN AIRLINES, INC.'S ORIGINAL PETITION**

This Original Petition is brought by Plaintiff American Airlines, Inc. ("American") against Defendant JetBlue Airways Corporation ("JetBlue"), for purposes of all claims asserted herein, and in support thereof shows this Court as follows:

### **SUMMARY OF ACTION**

1. This is an action to recover amounts due to American from JetBlue under a contractual agreement between American and JetBlue.

2. In 2020, American and JetBlue created the Northeast Alliance ("NEA"). The NEA was designed to offer consumers improved and increased services at four airports across the Boston and New York metropolitan regions, and in so doing enable American and JetBlue to compete more effectively with other airlines serving the Northeast United States—particularly United and Delta.

3. One component of the NEA was a revenue sharing arrangement called the Mutual Growth Incentive Agreement ("MGIA"). The MGIA aimed to incentivize both airlines to expand capacity at the four NEA airports. To promote that end, the MGIA tied each airline's share of the incremental revenue generated by the NEA to its contribution to capacity at NEA airports in a given year—regardless of whether customers flew or bought tickets from American or JetBlue.

4. The parties agreed to a detailed accounting process for calculating incremental revenue attributable to the NEA and allocating it between American and JetBlue. The MGIA's reconciliation and payment process envisioned that either American or JetBlue would make a periodic payment to the other airline, consistent with a contractually-agreed formula, so that each airline ultimately retained a share of incremental revenue proportionate to its capacity contribution.

5. In 2021, the United States brought a challenge to the NEA under the Sherman Act. In July 2023, the NEA was terminated after a federal district court issued a Final Judgment and Order enjoining American and JetBlue from further implementing the NEA.

6. While the district court terminated the NEA going forward, the court's Final Judgment and Order expressly held that American and JetBlue "may complete the audit, reconciliation, and payment processes set forth in the NEA Agreements in order to settle their obligations to one another with respect to flights flown on or before July 18, 2023."

7. American devoted substantial resources to providing JetBlue with monthly reports detailing the information relevant to the MGIA's reconciliation and payment process. And American provided JetBlue with a final invoice of all remaining amounts due under the MGIA no later than January 2024. JetBlue, however, has refused to pay that amount. And despite American's good faith efforts to resolve the parties' dispute, JetBlue continues to ignore its contractual obligations.

8. Under the terms of the MGIA's reconciliation and payment process, JetBlue owes American damages plus interest for its contributions to the NEA between April 1, 2022 and July 18, 2023. JetBlue has failed to pay American the amount due.

9. American brings this action to recover the amount due to it under the MGIA, as well as related relief to which it is entitled because of JetBlue's non-payment.

Copy from re:SearchTX

## DISCOVERY CONTROL LEVEL

10. Discovery in this case is intended to be conducted under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

## STATEMENT OF RELIEF SOUGHT

11. Pursuant to Rule 47 of the Texas Rules of Civil Procedure, American seeks monetary relief over $1,000,000, excluding interest, attorney fees, and costs.

## PARTIES AND SERVICE

12. American is a corporation organized and existing under the laws of the State of Delaware and registered to do business in the State of Texas by and through the Texas Secretary of State. Its principal place of business is 1 Skyview Drive, Fort Worth, Texas 76155.

13. JetBlue is a corporation organized and existing under the laws of the State of Delaware and registered to do business in the State of Texas by and through the Texas Secretary of State. Its principal place of business is 27-01 Queens Plaza N, Long Island City, NY 11101. JetBlue may be served by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas, 78701.[1]

## JURISDICTION AND VENUE

14. A substantial part of the events giving rise to the claim occurred in Tarrant County, Texas. Venue is therefore proper in the Eighth Business Court. *See* TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1); TEX. GOV'T CODE § 25A.003(j).

---

[1] JetBlue's most recent Texas Franchise Tax Public Information Report on file with the Texas Secretary of State lists its registered agent as National Registered Agents, Inc., 1999 Bryan St., Suite 900, Dallas, Texas 75201. However, this Report is dated November 15, 2023, and the Registered Agent listed for JetBlue as of the day this Petition was filed on the Texas Secretary of State's Website is Corporate Service Company.

3

Copy from re:SearchTX

15. This Court has subject-matter jurisdiction over this matter because the amount in controversy exceeds $10 million and it is an action arising out of a qualified transaction. *See* TEX. GOV'T CODE § 25A.004(d)(1). A qualified transaction is defined under the Code as a "transaction, other than a transaction involving a loan or an advance of money or credit by a bank, credit union, or savings and loan institution, under which a party pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $10 million." *Id.* § 25A.001(14).

16. Because American and JetBlue are both Delaware corporations, there is no complete diversity among the parties and this case must be litigated in state court.

17. The MGIA incorporates the NEA's forum-selection clause, which is relevant to federal law claims. That clause provides that certain claims arising in connection with the Agreement shall be "referred to the competent federal district courts in New York City, New York." Because there is no complete diversity between the parties, the clause is inapplicable and unenforceable with respect to state law claims, including this contractual dispute.

18. When, as here, any provision of the MGIA is unenforceable, the parties intended that such a provision should be treated as if it is "not present" in the agreement. *See* MGIA § 7.1 (incorporating NEA Article 10); NEA § 10.13 ("If any provision of this Agreement is determined by any court … to be unenforceable, the Parties intend that this Agreement be enforced as if the unenforceable provisions were not present . . . .").

19. This Court has personal jurisdiction over JetBlue pursuant to Tex. Civ. Prac. & Rem. Code § 17.042(1) because JetBlue has "contract[ed] . . . with a Texas resident and either party is to perform the contract in whole or in part in this state."

Copy from re:SearchTX

20. The MGIA's revenue sharing agreement expressly covers JetBlue flight services to and from Texas, including to and from Dallas-Fort Worth, Austin, and Houston. JetBlue also attributed its further expansion into Texas to its venture with American, citing its partnership with American as "enabl[ing]" its expansion to "new destinations" including San Antonio.

21. The MGIA was also negotiated and operated through innumerable electronic, oral, and written communications initiated into this State, for the purpose of entering into and operating a joint contractual venture with a business located in this State, for the purpose of expanding both parties' network—including through expanding services to and from Texas and affording greater access to customers traveling to and from Texas.

22. JetBlue has also purposefully directed its activities toward this State and availed of this forum for profit, benefit, and advantage by employing Texas residents, leasing or owning property in Texas, maintaining ground operations at airports in Texas, operating flights landing in, and departing from Texas, advertising its services to Texas residents, selling tickets and other goods and services to Texas residents, maintaining regular communication with customers in Texas, and otherwise directing its activities toward this forum for profit and gain.

23. There is a substantial connection between JetBlue's purposeful contacts with Texas and the operative facts of the litigation. The MGIA's revenue sharing agreement expressly covers JetBlue flight services to and from Texas, including to and from Dallas-Fort Worth, Austin, and Houston. All of JetBlue's ground and flight operations in Texas, as well as its capacity additions in Texas, are components of JetBlue's performance and entitlement to shared revenue under the MGIA. Indeed, JetBlue advertised to customers that its expanded operations in Texas under its

Copy from re:SearchTX

partnership with American would make "JetBlue [] Bigger in Texas."[2]  JetBlue's performance under the MGIA, as well as its breach of that agreement, thus has a substantial connection with Texas.

24. Jurisdiction in Texas also comports with traditional notions of fair play and substantial justice because JetBlue purposefully availed itself of the privilege of conducting business in this jurisdiction.  The burden to JetBlue of proceeding in this forum is low due to its physical presence and ongoing business operations in this State.  This forum also has a substantial interest in adjudicating this dispute, which involves contractual damages to a resident of this State, caused by breach of a contract negotiated through communications directed into this State, for the purpose of entering into an ongoing contractual relationship with a resident of this State.  So too does American have a substantial interest in obtaining convenient and effective relief in this forum.

25. Pursuant to the parties' contract, JetBlue had a contractual responsibility to make payments due under the MGIA to American, whose principal office is identified by the contract as at 1 Skyview Drive, Fort Worth, Texas 76155.

26. Because American is located in Tarrant County, Texas, JetBlue knew or should have known that the impact of its breach of contract would be concentrated in Tarrant County, Texas, where the counterparty with whom it negotiated the contract at issue is resident.

---

[2] *See, e.g.*, https://news.jetblue.com/latest-news/press-release-details/2021/Enabled-by-Its-Northeast-Alliance-with-American-JetBlue-Announces-Plans-for-Expansion-in-New-York-and-Boston-to-Bring-Everyday-Low-Fares-and-Great-Service-to-More-Routes-and-Markets-04-21-2021/default.aspx; https://ir.jetblue.com/news/news-details/2021/JetBlue-is-Bigger-in-Texas-as-All-New-Service-in-San-Antonio-Launches-with-Flights-from-New-York-and-Boston-10-31-2021/default.aspx.

Copy from re:SearchTX

## FACTUAL BACKGROUND AND ALLEGATIONS

### A. The Northeast Alliance And The Mutual Growth Incentive Agreement

27. American and JetBlue created the Northeast Alliance ("NEA") on July 15, 2020, to expand each airline's network and enhance services for passengers flying to and from airports in the New York and Boston metropolitan areas.

28. The NEA aimed to expand air travel options in the Northeast by adding new routes and improving scheduling and connections. To make an expanded and optimized network available to consumers, American and JetBlue's teams worked together to develop and optimize schedules, equipment assignments, slot and gate assignments, and address other logistics. The NEA also provided for asset swaps, codesharing, reciprocal frequent flyer benefits, and seamless service initiatives to improve customer experience.

29. To incentivize both airlines to expand capacity and optimize their offerings for consumers, the parties executed the MGIA's revenue sharing arrangement concurrently with the NEA Agreement on July 15, 2020.

30. Revenue sharing arrangements like those set forth in the MGIA are commonplace in joint ventures within the airline industry and serve to promote joint investment in increased capacity and improved service.

31. The MGIA's revenue sharing provision is based on the incremental revenue from services at NEA airports during the agreement's term. The parties' contractually agreed process for sharing revenue under the MGIA is set forth in more detail in Sections 2 and 4 of the MGIA and paragraphs 183-200 of Defendants' Post-Trial Proposed Findings of Fact in *United States v. American Airlines*, 21-cv-11558-LTS (Dkt. 324-1) (D. Mass. Nov. 11, 2022).

32. Each party's net revenue during a relevant period is calculated by comparing certain categories of passenger-related revenue attributable to NEA services, less certain expenses. *See*

7

Copy from re:SearchTX

MGIA, §§ 2.1, 2.3, 2.4, Appendix 2. From that net revenue pool, each carrier recovers its "Base Revenue"—a measurement based on a carrier's performance prior to the NEA and its current capacity. *See id.* §§ 2.1, 2.5, 2.8, 2.9.

33. The remaining revenue in the pool—the Incremental Revenue—is then divided among the two carriers based on each carrier's proportion of the total NEA capacity for the relevant year. *See id.* § 2.9.

34. The MGIA's focus on Incremental Revenue fulfills the Agreement's core objectives by creating an incentive for American and JetBlue to work together to maximize the attractiveness of each other's flying, whether through codesharing, schedule optimization, or frequent flyer cooperation, in order to generate increased demand and increase the overall Incremental Revenue by competing more effectively against other airlines—in particular United and Delta. And because the share of each carrier's Incremental Revenue depends on the carrier's capacity for the current period, the formula creates an additional incentive to grow.

35. The MGIA intended that both carriers ultimately would be entitled to keep their "Retained Revenue," or the sum of their Base Revenue and their share of Incremental Revenue. *See id.* § 2.10.

36. Because each carrier collects revenues from sales made to its respective customers throughout the year without regard to the MGIA's allocation of revenues, the MGIA's revenue sharing agreement provides for a retrospective transfer payment from the party that collected more than its designated share to the party that collected less. This arrangement is typical of other joint venture revenue sharing agreements within the airline industry in which American has participated, and which the U.S. Department of Transportation (and an economist for the U.S. Department of Justice writing in peer reviewed academic journals) have found to be pro-competitive.

8

Copy from re:SearchTX

37. The revenue-sharing process is settled via quarterly Periodic Mutual Growth Incentive Payments and a "transfer payment" due from the partner that collected more than its designated share to the partner that collected less—in essence, a true-up. *See id.* §§ 4.2, 4.5.

38. To facilitate these payments, the MGIA establishes a reporting and accounting system outlined in Article 4. After each quarterly accounting period, each carrier prepares and delivers to the other final calculations for the relevant accounting period. These calculations are the Periodic Final Calculations. *See id.* § 4.1.

39. Each airline's Periodic Mutual Growth Incentive Payment for a quarterly reporting period is calculated based on the Periodic Final Calculations. For any quarterly reporting period, one airline will generally have collected more than the Retained Revenue to which it is entitled under the MGIA; the other airline will have collected less. American and JetBlue agreed that the party that collected more than its designated share would make a transfer payment for that excess amount to the other party. *See id.* § 4.2.

40. At the end of each year, the Final Mutual Growth Incentive Payment for a calendar year is calculated and due. *See id.* §§ 4.4, 4.5.

41. The MGIA provides that the Final Mutual Growth Incentive Payment is due "within 21 days following delivery of the Annual Final Calculations for that Year." *Id.* § 4.5.

42. Section 4.4.5 of the MGIA provides that if the parties have "a good faith dispute regarding their respective Annual Final Calculations for that Year, they shall each make any Final Mutual Growth Incentive Payment that they in good faith believe is required and seek to resolve their dispute regarding the disputed portion as soon as possible thereafter."

43. On January 6, 2022, the parties entered into an agreement capping the Mutual Growth Incentive Payments ("MGIPs") for all periods between the execution of the MGIA and

9

Copy from re:SearchTX

March 31, 2022. The parties also agreed that "the cumulative calculation of MGIPs for the period from April 1, 2022 through December 31, 2022, will not include the Periodic Mutual Growth Incentive Payment for the three months ending March 31, 2022." In so doing, both parties reaffirmed that "no changes other than those set forth in [their letter agreement] are made to the MGIA" and that "the MGIA and any other agreement between the Parties shall otherwise remain in full force and effect in accordance with their terms."

### B. JetBlue Fails to Make Payments Under the Agreement

44. By August 16, 2022, American provided JetBlue Periodic Final Calculations for each month within the second quarter of 2022.

45. By October 5, 2022, American provided JetBlue Periodic Final Calculations for each month within the third quarter of 2022.

46. By February 3, 2023, American provided JetBlue Periodic Final Calculations for each month within the fourth quarter of 2022.

47. By May 5, 2023, American provided JetBlue Periodic Final Calculations for each month within the first quarter of 2023.

48. By September 5, 2023, American provided JetBlue Periodic Final Calculations for each month within the second quarter of 2023.

49. By September 15, 2023, American provided JetBlue Periodic Final Calculations for the period of July 1, 2023 through July 18, 2023.

50. On January 9, 2024, American sent an invoice to JetBlue reiterating JetBlue's total outstanding Mutual Growth Incentive Payment obligation under the MGIA.

51. On February 5, 2024, JetBlue sent American a calculation of the MGIA payment to which American was entitled under Section 4 of the MGIA. That calculation was only roughly 6% apart from American's calculation.

Copy from re:SearchTX

52. Nonetheless, JetBlue has refused to make payment under the MGIA of either amount.

53. Although American provided JetBlue with extensive financial information and analysis to substantiate its payment demand, JetBlue has refused to make payment to American of the amount due under the MGIA for April 1, 2022 through July 18, 2023, nor any lesser amount that it may believe is due to American instead.

54. Section 4.6 of the MGIA provides that "[i]f any payment amount [under the MGIA] is overdue, and it is determined that a Party owed such amount to the other Party, then the Party owing such amount shall pay interest at the Default Rate on the amount owed to the other Party, from the last date on which the proper payment was due until the date actually paid." "Default Rate" is the "prime rate of Citibank N.A. in effect on the date such payment was required to be made."

55. Section 8.3 of the NEA, incorporated by reference by Section 7.1 of the MGIA, provides that "[i]n addition to any other remedy available to a Party under this Agreement . . . in the event of a dispute, the non-prevailing Party shall pay the prevailing Party's reasonable costs and expenses (including reasonable attorneys' fees and expenses) incurred in connection with any suit or proceeding arising from such dispute."

C.  **The Payments Remain Due Notwithstanding The NEA's Termination**

56. American and JetBlue briefed the United States Department of Justice ("DOJ") and the United States Department of Transportation ("DOT") regarding their proposed alliance before announcing it in July 2020. Both agencies commenced lengthy investigations into whether the NEA was anticompetitive. After completing an exhaustive six-month investigation, the DOT allowed the NEA to go forward subject to several conditions it believed would ensure the partnership would be pro-competitive (each of which American and JetBlue followed to the letter).

11

Copy from re:SearchTX

The DOJ, however, decided to challenge the NEA under the Sherman Act by filing suit in the United States District Court for the District of Massachusetts.

57. On May 19, 2023, the district court enjoined the NEA. And on June 28, 2023, that court entered final judgment in DOJ's suit. The Court directed that American and JetBlue shall not share revenues with respect to flights flown after July 18, 2023.

58. Although the court enjoined the NEA going forward, the court's final judgment also expressly provided that American and JetBlue "may complete the audit, reconciliation and payment processes set forth in the [MGIA] in order to settle their obligations to one another with respect to flights flown *on or before July 18, 2023*, consistent with the relevant terms of the [MGIA]." (emphasis added).

59. JetBlue did not appeal the court's final judgment.

## CONDITIONS PRECEDENT

60. All conditions precedent to the bringing of this suit have been waived, have been performed, and/or have occurred.

## CAUSES OF ACTION

### Count I — Breach of Contract

61. American incorporates by reference the foregoing allegations in the preceding paragraphs as though fully set forth herein.

62. By executing the MGIA on July 15, 2020, American entered into a contract with JetBlue.

63. Under the MGIA, JetBlue is obligated to make quarterly and final-year payments pursuant to the contract's terms.

Copy from re:SearchTX

64. From April 1, 2022 to July 18, 2023, American satisfied all conditions precedent to recovery of payment under the MGIA. These reports put JetBlue on notice of its obligations to American. And, pursuant to the MGIA's terms, payment was due following these reports.

65. American invoiced JetBlue on January 9, 2024, for the outstanding amount due.

66. JetBlue to date has still not paid the amount and is in breach.

## CLAIM FOR ATTORNEYS' FEES

67. American incorporates by reference the foregoing allegations in the preceding paragraphs as though set forth herein.

68. As a result of JetBlue's refusal to pay the amount due to American and its breach of the MGIA, American was forced to retain legal counsel to prosecute these claims. American has incurred, and will continue to incur, legal fees and expenses associated therewith. American is entitled to, and hereby requests, its reasonable attorneys' fees and expenses incurred in pursuing its legal rights through this suit.

## PRAYER

For the reasons set forth above, American asks that upon final trial or other disposition of this lawsuit, American have and recover judgment against JetBlue for the following:

   a. Actual damages;

   b. Pre-judgment and post-judgment interest;

   c. Court costs;

   d. Attorneys' fees; and

   e. All other relief to which American is entitled, whether at law or in equity.

13

Copy from re:SearchTX

Dated:  April 28, 2025

Respectfully submitted,

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

David C. Tolley (*pro hac vice* forthcoming)
B.J. Trach (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Tel.:     (617) 948-6000
Fax:     (617) 948-6001
david.tolley@lw.com
william.trach@lw.com

Michael Bern (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
555 11th Street NW
Washington, DC 20004
Tel.:     (202) 637-2200
Fax:     (202) 637-2201
michael.bern@lw.com

*Attorneys for American Airlines, Inc.*

14

Copy from re:SearchTX

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Dee Kelly Jr.
Bar No. 11217250
dee.kelly.2@kellyhart.com
Envelope ID: 100181456
Filing Code Description: Petition
Filing Description: American Airlines, Inc.'s Original Petition
Status as of 4/28/2025 4:25 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Dee Kelly | | dee.kelly@kellyhart.com | 4/28/2025 4:19:39 PM | NOT SENT |

Copy from re:SearchTX

FILED IN
BUSINESS COURT OF TEXAS
BEVERLY CRUMLEY, CLERK
ENTERED
4/29/2025



# The Business Court of Texas, Eighth Division

| | |
|---|---|
| American Airlines, Inc., § | |
|    Plaintiff, § | |
| § | |
| v. § | Cause No. 25-BC08B-0007 |
| § | |
| JetBlue Airways Corporation, § | |
|    Defendant. § | |
| § | |

## Order of Recusal

Pursuant to Texas Rule of Civil Procedure 18b, the judge of this Court, on his own motion, hereby recuses himself in all remaining proceedings in this cause and requests the Presiding Judge of the Eighth Administrative Region to assign another judge and/or court to preside over this cause.

Signed this the 29th day of April 2025.

_____
Brian Stagner, Judge
Texas Business Court, Eighth Division

Copy from re:SearchTX

FILED IN
BUSINESS COURT OF TEXAS
05/01/2025 5:10:32 PM
BEVERLY CRUMLEY, Clerk

THE BUSINESS COURT OF TEXAS,
EIGHTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC. | § § | |
| - versus - | § § | CAUSE NO. 25-BC08B-0007 |
| JETBLUE AIRWAYS CORPORATION | § | |

### ORDER OF TRANSFER DUE TO RECUSAL

Whereas:

1. Judge Brian Stagner, the presiding judge of the Business Court of Texas, Eighth Division, Court B, has recused himself in the above-entitled case.
2. Following a recusal, the regional presiding judge must transfer the case to another court or assign another judge to the case. Tex. R. Civ. P. 18a (g)(7).

**IT IS HEREBY ORDERED** that the above-entitled cause is transferred from the Business Court of Texas, Eighth Division, Court B to the Business Court of Texas, Eighth Division, Court A. The Clerk of the Court will take the necessary actions to effectuate the transfer to the Business Court of Texas, Eighth Division, Court A.

Signed this the 30th day of April, 2024.

David L. Evans, Presiding Judge
EIGHTH ADMINISTRATIVE JUDICIAL REGION OF TEXAS

cc:  Honorable Jerry Bullard
     Honorable Brian Stagner
     Office of the Clerk for the Business Court of Texas
     File